JODI LINKER, Bar No. 230273
Federal Public Defender
Northern District of California
DANIEL BLANK, Bar No. 192457
ELIZABETH FALK, Bar No. 215236
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:    (415) 436-7706
Email:         Elizabeth_Falk@fd.org

Counsel for Defendant Soto III

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SANTOS MOISES SOTO III,<br><br>Defendant. | Case No.: CR 22–378 WHO<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO SEVER TRIAL FOR DEFENDANT SOTO III ON COUNTS 6 AND 7 FROM TRIAL ON ALL OTHER COUNTS**<br><br>**Court:**  Courtroom 2, 17th Floor<br>**Date:**  August 14, 2025<br>           1:30 p.m. |

## INTRODUCTION

The declarations provided to the Court on Defendant Saints Soto's Motion to Sever (Dkts. 78 and 79) readily demonstrate that a joint trial of both defendants on Counts 6 and 7 would substantially prejudice Saints Soto at trial by denying him the fundamental constitutional right to call witnesses in his own defense. Under either applicable legal standard identified by the Ninth Circuit,

Saints has demonstrated that both "favorable" and "substantially exculpatory" testimony will be out of his reach should the Court decline to sever his trial on Counts 6-7. In this vein, the Court may decide the instant motion on the FRCP 14 issue alone.

In addition to this constitutional problem, however, the indictment in this case is inherently flawed because the PPP loan fraud counts should not be joined for trial with the investor fraud charges. Simply put, allegations that the defendants fraudulently induced investments through puffery have no logical relationship with allegations that the defendant(s) lied on one loan application to the United States government about its rent obligations and the location of its employees. The government's overall response to this argument – that the offenses are properly joined because the defendants (allegedly) said false things to get money while running GoldenSpear – is unavailing and runs afoul of the actual allegations in the indictment that identify distinct objectives, manner and means of both sets of offenses.

At minimum, the submitted declarations of Elizabeth Falk and Santos Soto constitutionally requires the Court to sever Saints Soto's trial on Counts 6-7 from the remainder of the case. An honest assessment of the indictment, however, also requires the Court to sever counts 6 and 7 from trial completely from the other counts and proceed first with the investor fraud case against both defendants.

## ARGUMENT

### I. The Government's Response on Saints Soto's Motion for Severance Under Rule 14 Largely Ignores the Applicable Issue and Raises No Substantive Opposition to the Actual Argument

Without doubt, Saints Soto's opening motion submissions meets the undisputed legal standard for severance under FRCP 14's "exculpatory testimony" prong. Oddly, the government focuses the majority of its opposition to Saints' motion by analyzing caselaw under the "mutually antagonistic defenses" prong of Rule 14, despite the fact that such a theory was never once raised in Saints' opening brief. Oppn. at 17-18. As the declaration of Santos Soto makes clear, this is not at all a case where Saints is concerned that trial on these counts will be prejudicial because "each [defendant] is pointing the finger at each other." Oppn. at 18:9. Rather, the submitted declaration of Santos Soto is clear, unambiguous, and precisely meets the requisite standard for testimony "favorable to the

1   moving party." *See United States v. Reese*, 2 F.3d 870. 892 (9th Cir. 1993).[1]

2   Absent citation, the government's response endeavors to cabin Saints "exculpatory testimony"
3   analysis as somehow a "variance" of the "antagonistic defense" prong of Rule 14. Oppn. at 17:13;
4   18:6. This is error. Saints' motion instead addresses his undisputed and foundational right under the
5   constitution to call witnesses to testify on his behalf – a completely different basis for severance
6   under FRCP 14 than a claim he will be somehow injured at trial by Santos' trial theories or his
7   lawyer. The Court can accordingly disregard the majority of Page 17-18 of the government's
8   opposition as non-responsive.

9   Turning to the government's response to the *actual* argument made by Saints (Oppn. at 19), it
10  is unavailingly grounded in speculation and surmise. On this front, the declarations speak for
11  themselves and more than meet the legal standard[2] for severance under the "exculpatory evidence"
12  prong. The government has no valid basis to doubt the good faith of either undersigned counsel or
13  Santos Soto at this juncture, as each who have signed sworn declarations to the Court for which they
14  will be ultimately held to answer. Moreover, under the course of action proposed by Saints, Santos'
15  trial on Counts 6-7 would proceed first. This course would virtually eliminate the government's
16  concern that Santos would balk or hide behind his Fifth Amendment rights in response to Saints'
17  subpoena.

18  Nor does potential government cross-examination of Santos as to his possible motive for
19  testifying somehow vitiate the strength of Saints' motion. Oppn. at 19: 23-28. The standard for a
20  "credible" declaration in the FRCP 14 analysis is whether the facts stated therein are reasonable and
21  plausible, which is the case with Santos' declaration. Issues of potential motive and bias are squarely
22  for the jury to decide and do not in any way undercut the actual facts set forth by Santos. Indeed, the
23  alleged "ambiguity" identified by the government's opposition in the identifying information within
24  the loan application (Oppn. at 17:22-28) is squarely addressed by Santos in his declaration to the

---

[1] Although not required, Saints has also met the legal standard here for "substantially exculpatory testimony" articulated in *United States v. Mariscal*, 939 F.2d 884, 885 (9th Cir. 1991).
[2] The government does not quarrel with Saints' recitation of the appropriate legal standard. Oppn. at 19:1-3.

REPLY BRIEF ISO MOTION TO SEVER
*United States v. Soto III*, CR 22–378 WHO

Court. *See* Dkt 78 at ¶ 6. Without a severance, however, Saints will be flatly unable to get those facts before a jury because Santos has a constitutional right not to be called by a co-defendant at a joint trial on those counts. The government's speculation as to Santos' motives at this juncture is not a valid basis from which to remove these essential, exculpatory facts from the jury's purview. Without a severance, these essential and exculpatory facts will be completely lost to Saints.

Nor does the government's contention that Saints should have been on notice that SBA loan proceeds were deposited into the company bank account undercut the exculpatory nature of Santos' declaration. Gov. Oppn. at 20:1-5. As the allegations in the Indictment make clear, the alleged fraud in connection with the PPP loan involves extremely specific factual claims that the government contends were false, including the number and location of employees based in the United States and a specific amount of money that was spent on company rent each month. *See* Indictment, ¶ 27-33. This is not a case where the government contends that no real company existed such that Saints should have been suspicious when any PPP money flowed to GoldenSpear during the pandemic. Indeed, many small businesses were qualifying for PPP loans of varying amounts during that time. It is entirely reasonable that a company employee with (1) no knowledge of the details of the application or the requirements of the loan, who (2) generally understood that small businesses were being afforded financial relief during the COVID-19 pandemic would have seen a PPP deposit into a company bank account and understood that relief as 100% legitimate. In other words, knowledge of *receipt* of PPP loan proceeds does not mean that a person had any understanding of the representations made to obtain those proceeds. Here, it will be undisputed at trial that GoldenSpear had numerous actual employees and legitimate company expenses that were jeopardized by the COVID-19 pandemic. The trial will demonstrate that GoldenSpear was a real small business that was developing real technology. Nothing about Saints' potential knowledge *of the loan itself* undercuts the exculpatory nature of Santos' declaration with respect to the specific allegations[3] made against Saints in the indictment on Counts 6-7. Because it is the details of the loan application itself

---

[3] The government's argument that Saints would somehow be liable for bank fraud also rests on its contention that Saints knew the application contained false information. Oppn. at 20:8-10. Again, the declaration of Santos addresses this point in Saints' favor.

that constitute the alleged crime, the facts stated in Santos' declaration are essential to present a full and complete defense on Counts 6-7 for Saints.

For these reasons, the government's opposition to Saints' motion for severance under FRCP is not well-taken. The Court must grant a severance for Saints on Counts 6-7 to guarantee his constitutional right to call witnesses to testify on his behalf.

## II.     The Offenses are Misjoined under Federal Rule of Criminal Procedure 8(a)

To be clear, the primary basis for Saints' Motion to Sever is to ensure that trial on Counts 6-7 is severed as to him. In this vein, Saints' FRCP 14 argument is the gravamen of this motion. That being said, it is also patently clear that PPP counts (counts 6 and 7) are not properly joined offenses for trial in their own right on the face of the allegations of the indictment.[4] Accordingly, in the abundance of caution, Saints moves the Court for severance of those counts under Federal Rule of Criminal Procedure 8.

The government and Mr. Soto agree that the applicable legal standard as to proper joinder is whether or not the offenses charged are "of the same or similar character, or are based on the same acts or transaction, or are connected with or constitute parts of a common scheme or plan." *See* Fed. R. Crim. P. 8(a). *United States v. Jawara*, 474 F.3d 565, 572-73 (9th Cir. 2007). Here, the "common scheme or plan" cited by the government that purportedly connects the PPP allegations to the investor fraud allegations is (1) the same two defendants, (2) the same entity, and (3) getting money by saying false things. Oppn. at 15:14-17. Given the complete disparity in time period, manner and means, alleged victims, and disparity in objectives enunciated in the indictment, this generalized theory of joinder does not pass muster. The government's "common plan" theory is a far cry from the situation presented in *United States v. Kinslow*, 860 F.2d 963, 965-966 (9th Cir. 1988), where all the charged acts occurred within the same 24 hour period, in the same vehicle, and were part of a common objective "to get to California with the Blades family as hostages." *Id.* It is similarly disparate from the government's other cited case, *United States v. Whitworth*, 865 F.2d

---

[4] A separately filed motion addresses the problematic nature of the Indictment with respect to the so-called "GoldenSpear," "Paycheck Protection Program" ("PPP") and "AI Health" frauds being lumped together in two separate conspiracy counts. *See* Dkt. 72.

1268, 1277 (9th Cir. 1988), where tax and espionage charges were joined for trial because "the tax evasion flowed from the criminal activity" was a "necessary part" of concealing the proceeds of the espionage." *Id.* Here, the indictment states no logical connection between the PPP fraud counts and the investor charges, nor does the indictment read such that the PPP activity flowed from any of the alleged investor activity. As the indictment makes clear, the investor-related allegations occured entirely independently of PPP loan allegations. The charged offenses involve different types of victims and different, distinct funds that are not alleged to have overlapped with each other. Under these circumstances, joinder of the offenses for trial is improper.

In this vein, the government's opposition fails to distinguish the instant case from *United States v. Halper*, 590 F.2d 422, 429 (2nd Cir. 1978) where the Second Circuit reversed a trial court's decision joining of tax evasion and Medicaid fraud charges because the counts involved separate and distinct funds that were unrelated to each other. Because "commission of one of the offenses neither depended upon nor necessarily led to the commission of the other" and "proof of the one act neither constituted nor depended upon proof of the other", joinder was error. *Id.* So too, here. From the face of the indictment, it is clear that the PPP activity occurred independently of funds solicited from investors and played no role in and of the allegations surrounding investors. The PPP loan allegations in this case are accordingly stand-alone accusations that neither bear nor relate to the other charges in the case.

The government's opposition similarly fails to distinguish *United States v. Sarkisian*, 197 F.3d 966 (9th Cir. 1999) or otherwise explain how the allegations in the indictment related to the PPP loan application do not describe an "unrelated and isolated incident" of making a false claim for government windfall PPP funds "during the scheme" to misrepresent company assets and technologies to investors. *Id.* at 979. In *Sarkisian*, the government similarly claimed that the misjoined counts were essentially "all part of one big conspiracy with the same members." *Id.* at 976. The Ninth Circuit found error in the joinder, however, because "this was not an instance where one criminal activity naturally flows from separate criminal conduct." *Id.* Reading the indictment in the instant case, it is clear that the PPP fraud allegations are entirely separate and distinct from the investor fraud allegations, save that each set of allegations involve money, GoldenSpear, and Santos

and Saints Soto. This is a similar scenario as *Sarkisian* and insufficient basis upon which to predicate joinder.

Finally, the government's contention as to overlapping evidence at issue in these counts is grossly overstated. The overlapping evidence that would need to be presented at two separate trials is nothing more than the existence of GoldenSpear and the technology it was marketing. As mentioned in the opening brief, the verdict on Counts 6 and 7 will rise and fall with the actual statements made on the loan application regarding the number of "United States employees" and the actual rental cost of office space, and nothing more. *See* Indictment at ¶¶ 27-33. It is not pled that these sort of representations played any part in fraudulently inducing investor funds for GoldenSpear or AI Health; nor is it logical to conclude that these sort of facts would have moved the needle for investors. Similarly, the SBA was not presented with any information in the PPP loan application about roadshows, investor backing, or the technological advances the company had purportedly made. And of course, the SBA could not possibly have been presented with any information about AI Health, because that company was not even in existence at the time GoldenSpear applied for PPP funds. Any overlapping evidence at separate trials would be accordingly minimal and is not a basis for the Court to accept an improper joinder of counts.

As stated in the opening motion, the government opposition makes it clear that its joinder theory roots in an amorphous, overly globalized contention that the Sotos use their companies to lie about things in order to get money. This is precisely the sort of "vague thematic connection" to justify joinder that *Jawara* rejects. *Jawara*, 474 F.3d at 579. This Court should accordingly sever Counts 6-7 in their entirety from trial on the investor-related charges.

//
//
//
//
//
//
//

REPLY BRIEF ISO MOTION TO SEVER
*United States v. Soto III*, CR 22–378 WHO

7

**CONCLUSION**

For the aforementioned reasons, the Court should grant the motion for severance and set defendant Santos "Saints" Moises Soto III for a separate trial on Counts 6-7.  The Court should also sever the PPP counts for trial for both defendants under FRCP 8(a).

Dated:    June 27, 2025                    Respectfully submitted,

                                           JODI LINKER
                                           Federal Public Defender
                                           Northern District of California

                                                      /S
                                           ELIZABETH FALK
                                           Assistant Federal Public Defender

REPLY BRIEF ISO MOTION TO SEVER
*United States v. Soto III*, CR 22–378 WHO

8